OPINION *Page 2 
{¶ 1} On August 24, 2006, Magnolia Police Officer Nicholas Kline received a complaint about possible neglect involving dogs located in a barn in Waynesburg, Ohio. Officer Kline went to the barn to investigate, and entered the barn through an unlocked door. Based upon his observations on the condition of the dogs, Officer Kline called the Humane Society. On same date, Humane Society Officer Ron Sheaks went to the barn and posted a notice for someone to contact the Humane Society within twenty-four hours. The next morning, Officer Neil Denzer from the Stark County Dog Warden's Department went to the barn. He was joined by Officer Sheaks. Based upon their observations, they contacted the Magnolia Police Department for assistance. Sergeant Barbara Gardener arrived, as did the Assistant Director of the Humane Society, Jackie Godbey. The officers entered the barn through the unlocked door and removed the dogs, forty-two in all.
 {¶ 2} Thereafter, appellant, Joan Fisher, was charged with two counts of cruelty to animals in violation of R.C. 959.13. Two others were also charged, Belinda Rife Anello and Candy Martin. On September 20, 2006, appellant filed a motion to suppress, claiming an illegal search and seizure. A hearing was held on October 30, 2006. By judgment entry filed November 9, 2006, the trial court denied the motion.
 {¶ 3} A jury trial was held on November 13, 2006. The jury found appellant guilty as charged. By judgment entry filed November 16, 2006, the trial court sentenced appellant to an aggregate term of ninety days in jail, seventy days suspended.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows: *Page 3 
 I {¶ 5} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE."
 I {¶ 6} Appellant claims the trial court erred in denying her motion to suppress evidence gathered during the search of the leased premises, the freestanding barn, without a warrant. We disagree.
 {¶ 7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), *Page 4 116 S.Ct. 1657, 1663, ". . .as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 8} In its November 9, 2006 judgment entry, the trial court found the following facts that are supported by the evidence and essentially not contested by appellant:
 {¶ 9} 1. The Stark County Humane Society had received approximately five telephone calls concerning numerous barking dogs and an overwhelming smell coming from the barn. October 30, 2006 T. at 7-8.
 {¶ 10} 2. On August 24, 2006, Humane Society Officer Sheaks visited the barn. Two houses were nearby. Id. at 10. One large house was vacant and the other smaller house was a rental. Id. The barn was approximately five hundred feet from the larger house. Id. at 39. Officer Sheaks was unable to discern who rented the barn. Id. at 11-12.
 {¶ 11} 3. As a result of his investigation, Officer Sheaks posted a pink notice next to the padlock on the white barn. Id. at 12. The notice asked someone to contact the Humane Society within twenty-four hours. Id.
 {¶ 12} 4. On August 25, 2006 at approximately 10:30 a.m., Dog Warden Officer Denzer arrived at the barn. Id. at 38. Officer Sheaks arrived shortly thereafter. Id. at 41. They were joined by Magnolia Police Sergeant Gardener and Humane Society Assistant Director Godbey. Id. The notice was still in the same place. Id. at 13.
 {¶ 13} 5. Ms. Godbey testified as she exited her vehicle, there was an overwhelming odor of ammonia from urine. Id. at 14. She heard many barking dogs. Id. The temperature was around eighty degrees, and the humidity level was around *Page 5 
eighty to eighty-one percent. Id. at 16. Through side windows, a large number of caged dogs were discovered. Id. at 40.
 {¶ 14} 6. As a result of the officers' observations, Ms. Godbey and the officers entered the barn through an unlocked sliding door. Id. at 17, 42.
 {¶ 15} The trial court premised its decision on the finding that there was a limited expectation of privacy in an unlocked barn five hundred feet from the home, and the decision to enter the barn was reasonable given the conditions, thereby giving rise to exigent circumstances. The trial court further found under the plain view/plain smell exception to a warrant that the search was reasonable.
 {¶ 16} Appellant challenges the trial court's conclusions on curtilage, plain view/plain smell and exigent circumstances.
 {¶ 17} The first inquiry is whether the barn was within the curtilage of the home. In State v. York (1997), 122 Ohio App.3d 226, 231, our brethren from the Eleventh District discussed the concept of curtilage as follows:
 {¶ 18} "It has long been held that a person's house is his or her castle and that law enforcement officials may not enter a person's residence to search for evidence of a crime without a search warrant.Weeks v. United States (1914), 232 U.S. 383, 389-390, 34 S.Ct. 341, 343,58 L.Ed. 652, 654-655. Fourth Amendment protections of the home generally extend to the outbuildings located upon the curtilage, such as barns, and it can be fairly said that property owners have legitimate expectations of privacy in them. Oliver v. United States (1984),466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214, 225." *Page 6 
 {¶ 19} The specific facts in the case sub judice establish the owner of the home was not the lessee of the barn. Therefore, the curtilage rule is inapplicable. It was not established in the record which of the three co-defendants had leased the barn, but it was established the property owner had moved out of state. October 30, 2006 T. at 9-10. The renter of the smaller house on the property did not have any ownership interest in the property or the barn. Id. at 11. We further conclude the expectation of privacy that arises under the curtilage doctrine does not apply in this case even under the following four factors set forth by Justice White in U.S. v. Dunn (1987), 480 U.S. 294, 301:
 {¶ 20} "Drawing upon the Court's own cases and the cumulative experience of the lower courts that have grappled with the task of defining the extent of a home's curtilage, we believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by."
 {¶ 21} The barn sub judice was five hundred feet from the home, the barn was not within an enclosure surrounding either the larger or the smaller home, the barn was used to house some forty dogs, and although padlocked in front, the barn was visible from the road and was unlocked via the sliding door.
 {¶ 22} Even if other tribunals may find the barn, because it was leased by separate parties, had some expectation of privacy, we further find that under the plain *Page 7 
view/plain smell exception and exigent circumstances doctrine, the search was reasonable.
 {¶ 23} The York court addressed a fact scenario strikingly similar to the facts in this case. In York, a Humane Society officer looked into a barn after receiving complaints about a dead horse and after hearing moaning sounds from the barn. The officer observed an emaciated, dehydrated and starving pony. The court concluded looking into the barn was not surveillance, and any subsequent search was justified under the "open view" doctrine.
 {¶ 24} In this case, the officers heard the barking of numerous dogs which was the genesis of the complaints. Standing alone, barking is not cause for a search because "all dogs bark." However, the ammonia smell caused by excessive urine was readily apparent upon approaching the barn. The smell was described as "overwhelming." October 30, 2006 T. at 14. Dog Warden Officer Denzer observed through a window seventeen animals confined in cages or carriers stacked three high. Id. at 40. The temperature outside was eighty degrees with high humidity. Id. at 16, 41. It was with these readily open and observable facts that the officers entered the barn.
 {¶ 25} We conclude all of these collective factors led to a justified search under either the open view exception or the exigent circumstances doctrine. Further, the evidence in this case would clearly have been discovered if a warrant had been obtained; therefore, the inevitable discovery rule is applicable:
 {¶ 26} "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means * * * then the deterrence rationale has so little basis that the evidence should be *Page 8 
received. Anything less would reject logic, experience, and common sense." Nix v. Williams (1984), 467 U.S. 431, 444.
 {¶ 27} The facts alone would have justified the issuance of a search warrant: there were numerous complaints of barking dogs that were verified on two separate days, a twenty-four hour notice was posted with no response, there was a noxious odor coming from the barn, and there was verification of numerous dogs stacked in cages.
 {¶ 28} Upon review, we find the trial court did not err in denying appellant's motion to suppress.
 {¶ 29} The sole assignment of error is denied.
 {¶ 30} The judgment of the Canton Municipal Court of Stark County, Ohio is hereby affirmed.
 By Farmer, J. Gwin, P.J. and Wise, J. concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court of Stark County, Ohio is affirmed. *Page 1